# IN THE COURT OF APPEALS OF IOWA

No. 17-0561
Filed March 21, 2018

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**TOBIAS ISSAC FRY,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Des Moines County, John G. Linn, Judge.

Tobias Issac Fry appeals his conviction and sentence for assault with intent to commit sexual abuse causing bodily injury. **JUDGMENT AFFIRMED, SENTENCE AFFIRMED IN PART AND VACATED IN PART, AND REMANDED.**

Mark C. Smith, State Appellate Defender, and Bradley M. Bender, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Louis S. Sloven, Assistant Attorney General, for appellee.

Considered by Danilson, C.J., and Vaitheswaran and Bower, JJ.

**VAITHESWARAN, Judge.**

Tobias Issac Fry was charged with assaulting an employee of a care center at which he stayed. Following a bench trial, the district court found him guilty of assault with intent to commit sexual abuse, in violation of Iowa Code section 709.11(2) (2015). On appeal, Fry (1) challenges the sufficiency of the evidence supporting the district court's finding of guilt and (2) argues the district court erred in ordering him to make restitution of $25 for court-appointed attorney fees and in requiring him to pay court costs.

## I. Sufficiency of the Evidence

The district court set forth the elements of the crime as follows:

> That on or about the 28th day of November of 2015, the defendant assaulted the complaining witness here in this case. An assault would be an act intending to cause pain or injury to, or which is intended to result in physical contact which would be insulting or offensive to the other, with the apparent ability. That the defendant did so with the specific intent to . . . commit a sex act by force or against the will of the complaining witness. And, finally, that the defendant's assault caused a bodily injury to the complaining witness.

Fry concedes he assaulted the employee but argues the State did not produce "sufficient evidence to support a finding that [his] intent was to perform a sex act by force [or] against the will of" the employee. The district court defined specific intent as follows:

> Specific intent means not only being aware of doing an act and doing it voluntarily, but, in addition, doing it with a specific purpose in mind[.] [B]ecause determining the defendant's specific intent requires the trier of fact to decide what the defendant was thinking when the act was done, [i]t is seldom capable of direct proof. The trier of fact should consider the facts and circumstances surrounding the act to determine the defendant's specific intent. The trier of fact may, but is not required to, conclude a person intends the natural results of his acts.

The court found the State proved this element:

> In this case, there was a great deal of force, in the Court's opinion, exercised by this defendant, who is quite a bit bigger than the complaining witness. He physically grappled, manhandled, grabbed, held this complaining witness. At one point, his elbow struck the complaining witness, and she sustained a bruise. These acts, the Court believes, were specifically intended to result in physical contact with the complaining witness, which was insulting or offensive to her, and the crime of assault is a specific intent crime, and the Court concludes that the facts in this case establish beyond a reasonable doubt that specific intent.
>
> . . . .
>
> . . . . [T]he defendant intended to commit sexual abuse or, in other words, a sex act by force or against the will of the complaining witness. Again, the very physical nature of the acts committed by the defendant would compel the Court to conclude that he had the specific intent to commit a sex act against the will of the complaining witness. Clearly, she resisted, struggled to get free, and, yet, the defendant persisted in holding her, and with his hands, groped her breasts and her crotch area. This, coupled with the many statements the defendant made earlier to the complaining witness which were sexual in nature, convinces the Court that the defendant did have the specific intent to commit a sex act against the will of the complaining witness.

The court's finding of guilt is binding on us if supported by substantial evidence. *See State v. Beets*, 528 N.W.2d 521, 523 (Iowa 1995). This standard was satisfied.

*State v. Casady*, 491 N.W.2d 782, 787 (Iowa 1992), cited by Fry, does not lead us to a different conclusion. *Casady* listed several circumstances found to have satisfied the specific intent element, including "a sexual comment made by the defendant to the victim, touching in a sexual way, the removal or request to remove clothing, or some other act during the commission of the crime that showed a desire to engage in sexual activity." 491 N.W.2d at 787. Contrary to Fry's suggestion, this was not an exclusive list. But, even if it were, the record contains

evidence of all these circumstances. Fry's sexual comments before the incident, and specifically his mention of how lucky the employee's husband must be to see her naked and his request to have a "quickie" with the employee, could not have been a clearer expression of his sexual intent. As noted, he also held the employee close to his body and touched her in a sexual way.

Fry also points out the assault took place in the facility kitchen rather than a private location, a fact he believes undermines a finding of specific intent. We are not persuaded. Only Fry and the employee were in the kitchen; the other staff person on shift was "in [an]other room."

Finally, Fry asserts he did not deceive or threaten the employee. But the definition of specific intent does not require deception or threats.

The record contains substantial evidence of specific intent. We affirm Fry's conviction for assault with intent to commit sexual abuse.

## II. *Restitution of Attorney Fees and Court Costs*

The district court entered an order styled "judgment entry." The court required Fry to pay "court costs, and the cost of his court-appointed attorney." The court concluded "the defendant is capable of paying $25 towards court-appointed attorney fees."

Fry "appeals the portion of his sentence requiring him to make restitution for court costs and $25 toward his court appointed attorney fees." He argues the district court "failed to properly consider his reasonable ability to pay the costs of his legal assistance" and failed to consider his "ability to pay the court-ordered court costs." The State counters that the issue is not ripe for review. In its view, "the sentencing court did not have the total amount of court costs available" at the

time of sentencing and, accordingly, the appeal is premature. *See State v. Jackson*, 601 N.W.2d 354, 357 (Iowa 1999); *State v. Swartz*, 601 N.W.2d 348, 354 (Iowa 1999).

This court distinguished *Swartz* in *State v. Campbell*, No. 15-1181, 2016 WL 4543763, at *3 (Iowa Ct. App. Aug. 31, 2016). We said *Swartz* "contemplates a situation in which the court has ordered an amount of restitution without determining the defendant's reasonable ability to pay." *Campbell*, 2016 WL 4543763, at *3. Campbell did "not challenge the amount of his restitution" but the evidentiary basis for the court's finding that he had a reasonable ability to pay. *Id.* Because the court made the ability-to-pay finding in its written sentencing order, we concluded the issue could be reviewed on direct appeal. *Id.*

The same holds true here with respect to the district court's order finding Fry had the ability to pay $25 for court-appointed attorney fees. Fry contends the district court abused its discretion in "failing to properly consider [his] ability to pay the costs of his legal representation." As in *Campbell*, he simply challenges the sufficiency of the evidence to support this finding. The issue is ripe for review, and we proceed to the merits.

"[S]ection 910.2 authorizes a sentencing court to order restitution for court costs and attorney fees only to the extent of the defendant's reasonable ability to pay the amount ordered." *State v. Kaelin*, 362 N.W.2d 526, 528 (Iowa 1985). Fry's attorney submitted a statement listing his court-appointed attorney fees as $960. The district court found Fry capable of paying $25. Although he was indigent and experienced financial hardship in the year preceding the offense, he previously earned cash compensation for landscaping work and testified to his desire to

continue performing that type of work. We are not convinced the court abused its discretion in holding him responsible for $25 of the $960 bill.

Fry also takes issue with the court's statement, "I have to tax some minor amount of attorney fees." He argues, "The court mistakenly believed that it had to order [him] to repay something for his court-appointed fees." We disagree. The court used the term "have to" while listing various components of the sentence. We are not convinced the two words reflected a belief the court was statutorily required to order the payment of some amount of the attorney fee obligation whether or not Fry was able to pay the amount. *See* Iowa Code §§ 910.2 ("When the offender is not reasonably able to pay all or a part of the . . . court-appointed attorney fees ordered pursuant to section 815.9, including the expense of a public defender, . . . the court may require the offender in lieu of that portion of the . . . court-appointed attorney fees ordered pursuant to section 815.9, including the expense of a public defender . . . restitution for which the offender is not reasonably able to pay, to perform a needed public service for a governmental agency or for a private nonprofit agency."); 910.3 (allowing the defendant to raise "any mental or physical impairment which would limit or prohibit the performance of a public service"); *State v. Haines*, 360 N.W.2d 791, 794 (Iowa 1985) (concluding restitution statute does not violate right to counsel in light of the protections in place to relieve the defendant of the restitution obligation). Notably, the court's written sentencing order made no reference to a mandatory attorney-fee obligation but focused instead on the amount Fry was capable of paying. We conclude the district court's stray use of "have to" in its oral rendition of the sentence does not mandate

reversal. We affirm the district court's imposition of a $25 attorney-fee restitution obligation.

We turn to the district court's imposition of court costs. A statement filed with the court before sentencing identified costs of $677.52.[1] This restitution obligation, like the court-appointed attorney fee obligation, is subject to a defendant's ability to pay. *State v. Kurtz*, 878 N.W.2d 469, 473 (Iowa Ct. App. 2016). The district court ordered Fry to pay "court costs" without determining his reasonable ability to pay those costs. We vacate that portion of the sentence and remand for a determination of Fry's reasonable ability to pay those costs. *See State v. Johnson*, 887 N.W.2d 178, 184 (Iowa Ct. App. 2016) ("Although the sentencing court did state Johnson was reasonably able to pay $100 of his court-appointed attorney fees, the record is silent as to whether the court considered Johnson's ability to pay the court-ordered court costs. Because we cannot determine whether the court reasonably exercised its discretion when it ordered restitution for court costs, we vacate that portion of the sentence and remand for a determination of Johnson's reasonable ability to pay.").

### III.    *Disposition*

We affirm Fry's conviction for assault with intent to commit sexual abuse. We also affirm the district court's determination that Fry was able to pay $25 in restitution for court-appointed attorney fees. We vacate that portion of the district

---

[1] The clerk of court later filed a "financial summary" of all court costs. We only consider the costs on record at the time judgment was entered.

court's judgment entry imposing a restitution obligation for court costs and remand for a determination of Fry's reasonable ability to pay those costs.

**JUDGMENT AFFIRMED, SENTENCE AFFIRMED IN PART AND VACATED IN PART, AND REMANDED.**